UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

D.C. CENTER FOR INDEPENDENT
LIVING, et al.

Plaintiffs,

v.

DISTRICT OF COLUMBIA, et al.

Defendants.

No. 1:22-cv-03541 (JMC)

---

**MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS PLAINTIFFS' COMPLAINT**

---

VLADECK, RASKIN & CLARK, P.C.
565 Fifth Avenue, 9th Floor
New York, New York 10017
(212) 403-7300

BIZER & DEREUS
3319 St. Claude Ave.
New Orleans, LA 70117
T: (504) 619-9999; F: (504) 948-9996

Of Counsel:
    Maia Goodell

Of Counsel:
    Garret DeReus
    Andrew Bizer

## TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................... i

Table of Authorities ............................................................................................ ii

PRELIMINARY STATEMENT ............................................................................ 1

FACTS .................................................................................................................. 1

LAW & ARGUMENT ........................................................................................... 5

I.     Plaintiffs Have Sufficiently Alleged Standing ............................................. 5

       A.     The Individual Plaintiffs Have Sufficiently Alleged Injury. ............ 6

       B.     The Organizational Plaintiffs Have Sufficiently Alleged Injury ...... 7

       C.     All Plaintiffs Have Sufficiently Alleged Causation,
              Redressability, and Standing to Seek Injunctive Relief. ................ 10

II.    Plaintiffs Have Stated a Claim. ................................................................. 13

       A.     Defendants Do Not Argue That Plaintiffs Have Not
              Adequately Alleged the First and Third Elements of an
              ADA/RA Claim. .............................................................................. 17

       B.     Plaintiffs Have Adequately Alleged an ADA Claim
              Based on Defendants' Failure to Provide Program Access
              as to Their On-Street Parking. ....................................................... 19

       C.     Plaintiffs Have Adequately Alleged an ADA Claim
              Based on Defendants' Policy or Practice of Making
              On-Street Parking and Pedestrian Crossing Inaccessible
              Via Use of Bicycle Lanes. .............................................................. 25

       CONCLUSION .................................................................................................. 30

TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Am. Council of Blind of New York, Inc. v. City of New York,
495 F. Supp. 3d 211 (S.D.N.Y. 2020)................................................................11, 19

Ams. for Safe Access v. Drug Enf't Admin.,
706 F.3d 438 (D.C. Cir. 2013) .............................................................................12

Ashcroft v. Iqbal,
556 U.S. 662 (2009)................................................................................23, 24, 26

Attias v. Carefirst, Inc.,
865 F.3d 620 (D.C. Cir. 2017) ...............................................................................7

Azam v. D.C. Taxicab Comm'n,
46 F. Supp. 3d 38 (D.D.C. 2014) ...........................................................................6

Badalamenti v. La. Dep't of Wildlife & Fisheries,
439 F. Supp. 3d 801 (E.D. La. 2020) ...................................................................29

Bell Atl. Corp. v. Twombly,
550 U.S. 544 (2007).............................................................................................23

Braden v. Wal–Mart Stores, Inc.,
588 F.3d 585 (8th Cir. 2009) ...............................................................................29

Breeze v. Kabila Inc.,
575 F. Supp. 3d 141 (D.D.C. 2021) ........................................................................6

Bronx Indep. Living Servs. v. Metro. Transp. Auth.,
No. 16 Civ. 5023 (ER), 2021 WL 1177740 (S.D.N.Y. Mar. 29, 2021)..............9, 10

Brooklyn Ctr. for Indep. of the Disabled v. Bloomberg,
290 F.R.D. 409 (S.D.N.Y. 2012) ...........................................................................9

Brown v. F.B.I.,
793 F. Supp. 2d 368 (D.D.C. 2011) ........................................................................5

Chaffin v. Kan. State Fair Bd.,
348 F.3d 850 (10th Cir. 2003) .............................................................................17

Civic Ass'n of Deaf of N.Y.C. v. Giuliani,
970 F. Supp. 352 (S.D.N.Y. 1997) .......................................................................16

Colony Ins. Co. v. Peachtree Const., Ltd.,
    647 F.3d 248 (5th Cir. 2011) .................................................................................23

Ctr. for Responsible Sci. v. Gottlieb,
    346 F. Supp. 3d 29 (D.D.C. 2018), aff'd sub nom. Ctr. for Responsible Sci. v.
    Hahn, 809 F. App'x 10 (D.C. Cir. 2020) .................................................................8

Disability Rts. Council of Greater Washington v. D.C.,
    No. Civ.A. 04-0529(JDB), 2005 WL 513495 (D.D.C. Mar. 3, 2005) .......................................6

*    Equal Rts. Ctr. v. D.C.,
    741 F. Supp. 2d 273 (D.D.C. 2010) ....................................................................6, 12

Equal Rts. Ctr. v. Uber Techs., Inc.,
    525 F. Supp. 3d 62 (D.D.C. 2021) (Ketanji Brown Jackson, J.) .........................................5, 12

Erby v. United States,
    424 F. Supp. 2d 180 (D.D.C. 2006) ........................................................................22

Falls v. Bd. of Comm'rs of New Orleans Reg'l Transit Auth.,
    No. CV 16-2499, 2017 WL 2730781 (E.D. La. June 26, 2017) .................................17, 18, 24

Falls v. Hous. Auth. of Jefferson Par.,
    No. 15-6501, 2016 WL 1366389 (E.D. La. Apr. 6, 2016) .......................................................28

Flyers Rts. Educ. Fund, Inc. v. U.S. Dep't of Transp.,
    957 F.3d 1359 (D.C. Cir. 2020) ..............................................................................8

*    Fortyune v. City of Lomita
    766 F.3d 1098, 1103 (9th Cir. 2014)  .......................................................19, 21, 22

*    Frame v. City of Arlington,
    657 F.3d 215 (5th Cir. 2011) .........................................................................5, 13, 14

Gaylor v. Ga. Dep't of Nat. Res.,
    No. 2:11-CV-288-RWS, 2013 WL 4790158 (N.D. Ga. Sept. 6, 2013) .................................17

Hainze v. Richards,
    207 F.3d 795 (5th Cir. 2000) ..............................................................................14

Jibril v. Mayorkas,
    20 F.4th 804 (D.C. Cir. 2021) ...............................................................................5

Johnson v. City of Saline,
    151 F.3d 564 (6th Cir. 1998) .............................................................................15

Jones v. Kirchner,
    835 F.3d 74 (D.C. Cir. 2016) .............................................................................25

Kinney v. Yerusalim,
    9 F.3d 1067 (3d Cir. 1993)..................................................................................16

Kirola v. City & Cnty. of San Francisco,
    860 F.3d 1164 (9th Cir. 2017) ...............................................................5, 10, 13, 25

Levine v. Nat'l R.R. Passenger Corp.,
    80 F. Supp. 3d 29 (D.D.C. 2015) ..........................................................................14

Miraglia v. Bd. of Supervisors of the La. State Museum,
    901 F.3d 565 (5th Cir. 2018) ...........................................................................14, 18

Namisnak v. Uber Techs., Inc.,
    971 F.3d 1088, 1092-93 (9th Cir. 2020) ...............................................................28

Nat'l Ass'n of Home Builders v. E.P.A.,
    667 F.3d 6 (D.C. Cir. 2011)....................................................................................9

Nat'l Fair Hous. All. v. Travelers Indem. Co.,
    261 F. Supp. 3d 20 (D.D.C. 2017) .......................................................................7, 8

Osborn v. Visa Inc.,
    797 F.3d 1057 (D.C. Cir. 2015) ...........................................................................10

Pascuiti v. New York Yankees,
    87 F. Supp. 2d 221 (S.D.N.Y. 1999).....................................................................16

People for the Ethical Treatment of Animals v. U.S. Dep't of Agric.,
    797 F.3d 1087 (D.C. Cir. 2015) ...........................................................................7, 8

PGA Tour, Inc. v. Martin,
    532 U.S. 661 (2001)..............................................................................................14

Pietrangelo v. Refresh Club, Inc.,
    No. 18-cv-1943, 2019 WL 2357379 (D.D.C. June 4, 2019)...................................12

Robles v. Domino's Pizza, LLC,
    913 F.3d 898 (9th Cir. 2019) ................................................................................27

Sarfaty v. City of Los Angeles
    No. 2:17-cv-03594-SVW-KS, 2019 WL 8163477, at *6 (C.D. Cal. 2019). ...............19, 20, 21

Tatum v. Doctor's Assocs., Inc.,
    No. 14- 2980, 2016 WL 852458 (E.D. La. Mar. 4, 2016) ....................................17

Tennessee v. Lane,
    541 U.S. 509 (2004)..............................................................................................15

**Statutes**

29 U.S.C. § 794(a) ............................................................................................14

29 U.S.C. §§ 796 – 796f–6 Title VII, Part A ...................................................3

29 U.S.C. § 796f–4 ........................................................................................3, 9

42 U.S.C. 12132 ..............................................................................................14

42 U.S.C. § 12134(a) .......................................................................................15

Americans with Disabilities Act (ADA) ................................................... *passim*

DC Human Rights Act .....................................................................................14

Rehabilitation Act of 1973 .........................................................................3, 14

**Other Authorities**

28 C.F.R. § 35.149 ...........................................................................................15

28 C.F.R. § 35.150 ...........................................................................................21

28 C.F.R. § 35.150(a) ...........................................................................15, 16, 30

28 C.F.R. § 35.151 (a) ......................................................................................15

28 C.F.R. § 35.151(b)(1) ..................................................................................16

PRELIMINARY STATEMENT

Plaintiffs respectfully submit this memorandum in opposition to Defendants' motion to dismiss Plaintiffs' Complaint.[1] An oral hearing is respectfully requested on this motion.

FACTS

Defendants' factual recitation ignores most of the pertinent facts in the Complaint. Plaintiffs are people with mobility disabilities and organizations that represent them. They come from and travel to many parts of the District of Columbia (hereinafter "the District"), but they are blocked in their daily lives—indeed at times endangered—by the inaccessibility of the following services, which Defendants provide to nondisabled people: (1) on-street parking; (2) curb access; (3) pedestrian crossings (collectively, "Services at Issue"). Defendants' program of installing miles of protected bicycle lanes without planning for disability access causes or compounds these discriminatory barriers. Complaint, Dkt. 1, ¶¶ 29-30.

The Complaint explains that the District provides on-street parking to nondisabled residents, but makes only 2% of metered parking even ostensibly accessible to the 12% of residents (and millions of visitors) with mobility disabilities. Those spaces are relegated to two small sections of the District. Complaint ¶¶ 95-99. Many of these "accessible" spaces are not actually accessible; they do not comply with ADA guidance because they lack the clearance or curb ramp access that many people with mobility disabilities need. Complaint ¶¶ 47-50, 151, 155. Indeed, the Complaint sets forth written admissions of Defendants' deliberate policy to provide only inaccessible on-street parking in most instances. Complaint ¶¶ 100-121.

---

[1] Defendants' motion is incorrectly titled a motion to dismiss Plaintiffs' "Amended Complaint." Only one complaint has been filed in this matter.

Instead of working to remedy this systemic discrimination, the District is redesigning streets in a way that compounds it. The District has embarked on a program of installing miles of new protected bicycle lanes. Complaint ¶ 30. Defendants regularly use a design in which parking spaces that were formerly next to the curb are moved outside of the protected bicycle lane, leaving no access. Complaint ¶ 48, 54-60. Where there is no parking, the bicycle lane blocks curb access, sometimes for an entire long block—interposing posts and low concrete blocks as well as speeding bicycles to block mobility-disabled passengers from being picked up and dropped off. Complaint ¶¶ 56, 88, 163. Defendants admit as much: beginning in 2022, they will install at least 10 miles of bicycle lanes per year that are protected "through the use of vertical posts, curbs, or by placing a parking lane between the travel lanes and the [bicycle] lanes." Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss Plaintiffs' Amended Complaint, Dkt. 15-1 ("Def. Mem"), at 5.

The Complaint includes examples of such discriminatory alterations on 17th Street NW, in front of Theodosia Robinson's building on a different street in the Northwest district, on 4th Street SW where Dana Bolles frequently travels, and on Connecticut Avenue where Dupont East Civic Action Association (DECAA) member Kerry Bedard travels. Complaint ¶¶ 150, 156, 162-65, see id. ¶¶ 51-82. Van drivers for plaintiff D.C. Center for Independent Living ("DCCIL") encounter this issue with increasing frequency in various locations. Complaint ¶¶ 86-88.

Before the bicycle lanes were installed, people could alight from vehicles directly onto the sidewalk. Complaint ¶ 76. This access is critical for people with disabilities—including plaintiff Dana Bolles, who uses a side wheelchair ramp, plaintiff Theodosia Robinson, who uses a rolling walker, many consumers who use the van that plaintiff DCCIL operates, and disabled members of plaintiff DECAA. Complaint ¶ 76 After the bicycle lane alterations, disabled people must cross

bicycle lanes with speeding bicycles, low concrete blocks, and bollards, and then climb a curb. Complaint ¶¶ 74-76, 164. In addition, Defendants design bicycle lanes for high speeds in pedestrian crossings, and Defendants fund training for cyclists that lacks content about people with disabilities. Complaint ¶ 81-82. Defendants could use protected bicycle lane designs that provide curb access for disabled people but, except on rare occasion, choose not to. Complaint ¶¶ 61-62, see id. ¶¶ 51-60, 63-71.

Plaintiff DCCIL serves thousands of consumers with disabilities in the District of Columbia, including the 12% of residents who have mobility disabilities. Complaint ¶¶ 4, 10, 31. Independent living centers like DCCIL receive funding authorized by the Rehabilitation Act of 1973, as amended, Title VII, Part A, 29 U.S.C. §§ 796 – 796f–6. Their statutory mandate requires them to operate under the principle of consumer control, and includes advocacy, both at an individual level and to change systemic barriers that prevent people with disabilities from full participation in American society. See 29 U.S.C. § 796f–4. DCCIL provides a transportation service for people with disabilities as part of its work to promote independence and integration for people with disabilities. Complaint ¶¶ 83, see id. ¶¶ 4-5. DCCIL's wheelchair-accessible vans pick residents up and drop them off at various locations throughout the District. Complaint ¶ 84.  Before the District began installing miles of bicycle lanes, the vans had direct access to the curb. Complaint ¶ 76. Now, increasingly, they have to pick up and drop off people in bicycle lanes. Complaint ¶ 88. This procedure risks the safety of both DCCIL employees and consumers. Complaint ¶¶ 88, 134-35.

Plaintiff Dupont East Civic Action Association (DECAA) has fifty active members, many of whom have mobility disabilities. Complaint ¶ 13. For example, one member has struggled with bicycle lanes blocking curb access and a lack of accessible parking in various locations throughout

the District, including on 17th Street and on Connecticut Avenue. As a result, she visits the areas less often, spends more time parking, has to go to more distant stores, and, on at least one occasion, feared bodily harm from a cyclist whizzing by. Complaint ¶¶ 145-50. Further, DECAA's mission is to conduct a variety of civic activities within its boundaries in the greater Dupont Circle area, but it has had to spend substantial time and effort opposing Defendants' decision to block curb access with the protected bicycle lane on 17th Street. Complaint ¶¶ 12, 64, 101-107.

Plaintiff Dana Bolles uses a motorized wheelchair, drives a van with a side wheelchair ramp, and has a disabled parking permit. Complaint ¶¶ 16-17. She lives in the Navy Yard area and often travels to the Southwest area. Complaint ¶ 153, see id. ¶ 17. The number of accessible parking spaces is generally inadequate for her to drive to many destinations, limiting her ability to travel and shop. Complaint ¶¶ 152-54, 157-58. She has observed that the design Defendants regularly use for bicycle lanes requires the ramp to deploy into the bicycle lane. This results in a reduction of the already inadequate number of parking spaces that are accessible to her, including on 4th Street SW. Complaint ¶¶ 155-57.

Plaintiff Teodosia Robinson uses a rolling walker and has difficulty stepping up or down; she drives a car and has a disabled parking permit. Complaint ¶ 19. She lives in the Northwest area and would like to travel more than she is able to, because of the limited accessible parking available. Her ability to travel has been further limited by the installation of protected bicycle lanes. Complaint ¶ 160-62. She has had to pay for parking or ride services rather than drive to her medical clinic, and avoids going to the drug store she would like to go to because of the lack of accessible parking. Complaint ¶¶ 160, 161. She has experienced difficulty being picked up and has had close calls with bicycles that almost hit her because of Defendants' installation of a protected bicycle lane blocking curb access in front of her apartment building. Complaint ¶ 165.

LAW & ARGUMENT

I.    Plaintiffs Have Sufficiently Alleged Standing.

Plaintiffs satisfy their burden to allege a personal stake in the case because the Complaint contains sufficient factual matters to make their claim of actual or imminent harm caused by Defendants plausible on its face. See Jibril v. Mayorkas, 20 F.4th 804, 814 (D.C. Cir. 2021). In this motion, the court accepts as true all factual allegations of the complaint and draws all plausible inferences in plaintiffs' favor. Id. at 809. "At the pleading stage, 'general factual allegations of injury resulting from the defendant's conduct may suffice,' and the court 'presumes that general allegations embrace the specific facts that are necessary to support the claim.'" Brown v. F.B.I., 793 F. Supp. 2d 368, 374 (D.D.C. 2011) (quoting Sierra Club v. EPA, 292 F.3d 895, 898 (D.C. Cir. 2002), in turn quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992)).

Under the ADA, it is well established that plaintiffs need not allege personal experience with every barrier created by a discriminatory public program. As explained in a case Defendants cite: "The standard for injury in fact is whether [plaintiff] has encountered at least one barrier that interfered with her access to the particular public facility and whether she intends to return or is deterred from returning to that facility." Kirola v. City & Cnty. of San Francisco, 860 F.3d 1164, 1175 (9th Cir. 2017) (holding after trial that plaintiff had established standing to challenge accessibility barriers in city's public libraries, pools, park facilities, and pedestrian right-of-way that she visited or wanted to visit but was deterred); see also Frame v. City of Arlington, 657 F.3d 215, 236 (5th Cir. 2011) (holding that an allegation of systemic failure to build curb ramps when streets were altered, together with specific examples of harm to plaintiffs, was sufficient for a city-wide challenge at the motion to dismiss stage); Equal Rts. Ctr. v. Uber Techs., Inc., 525 F. Supp. 3d 62, 76 (D.D.C. 2021) (Ketanji Brown Jackson, J.) (finding that an awareness of discriminatory conditions at Uber and subsequent deterrence from using Uber meets the standard for injury in

fact); Breeze v. Kabila Inc., 575 F. Supp. 3d 141, 159 (D.D.C. 2021) (reviewing cases, discussing and adopting the "futile gesture doctrine" for Title III ADA challenges to violations inside a public accommodation that plaintiff was deterred from entering).

The Complaint here more than meets these standards and alleges injury-in-fact to both the individual and organizational plaintiffs. It also sets forth facts showing causation, redressability, and ongoing harm.

A.   The Individual Plaintiffs Have Sufficiently Alleged Injury.

Plaintiffs have alleged injury in fact. Contrary to Defendants' arguments, allegations of harm as specific as those in the Complaint here cannot be dismissed as "conclusory." Plaintiffs have described exactly how the bicycle lanes created less accessible streets and cause injury. Each plaintiff has given specific examples of encountering barriers in places they would like to visit but cannot or must do in a more restricted manner, and other harms. Supra at 1-3. Courts have found even less detailed allegations to suffice at the motion to dismiss stage. See Azam v. D.C. Taxicab Comm'n, 46 F. Supp. 3d 38, 45-46 (D.D.C. 2014) (holding that an allegation that requirement of dome light in taxis created a "hazardous condition" for disabled drivers was sufficient for standing at pleading stage)[2]; Equal Rts. Ctr. v. D.C., 741 F. Supp. 2d 273, 281-82 (D.D.C. 2010) (explaining that lottery purchasers in wheelchairs who faced longer waits, humiliation of asking for assistance, and risk to personal safety sufficiently alleged injury caused by inaccessible vendors); Disability Rts. Council of Greater Washington v. D.C., No. Civ.A. 04-0529(JDB), 2005 WL 513495, at *1 (D.D.C. Mar. 3, 2005) (finding injury-in-fact where plaintiff had to spend extra time looking for

_____

[2]  In Azam, the Court held that plaintiffs failed to state a claim because there was no allegation that the dome lights created a more hazardous condition for people with disabilities than for those without. Here, in contrast, plaintiffs allege that people with mobility disabilities cannot safely navigate Services at Issue because they have difficulty walking and stepping up and down and use wheelchairs or other mobility aids.

accessible parking spaces, suffered humiliation asking others for help to put money in parking meters, and incurred additional expense parking at private garages).

Initially, and notably, Defendants do not appear to contest the individual plaintiffs' injury caused by lack of accessible on-street parking in the District. They challenge only the sufficiency of allegations of injury caused by the discriminatory bicycle lanes. See Def. Mem. at 10. This argument is without merit.

Defendants concede that Robinson has sufficiently alleged injury in fact, questioning only causation, which is addressed below. Def. Mem. at 9. For Bolles, Defendants suggest that the Court find, contrary to the Complaint, that the protected bicycle lane on 4th Street SW does not make the parking in that area more inaccessible to Bolles. Defendants propose a further counter-complaint finding that there is sufficient on-street accessible parking for her in the Navy Yard area. Def. Mem. at 8. This suggestion is not appropriate on a motion to dismiss, and the factual speculations on which it is based will be easily disproven at the appropriate time in the litigation. Both Robinson and Bolles allege concrete harms and substantial risk of future harm, supra at 2-4, which constitute injury in fact. See Attias v. Carefirst, Inc., 865 F.3d 620, 627 (D.C. Cir. 2017) (reversing dismissal, holding complaint allegations sufficient to allege substantial risk of harm).

B.  The Organizational Plaintiffs Have Sufficiently Alleged Injury.

An organization, like an individual, can establish direct organizational standing. People for the Ethical Treatment of Animals v. U.S. Dep't of Agric., 797 F.3d 1087, 1094 (D.C. Cir. 2015). While harm to abstract social interests is not sufficient, devotion of organizational resources to counteract unlawful policies or perceptible impairment of the organization's mission constitutes sufficient injury to confer standing. Id.; Nat'l Fair Hous. All. v. Travelers Indem. Co., 261 F. Supp. 3d 20, 25–26 (D.D.C. 2017). In People for the Ethical Treatment of Animals, the organization's ability to prevent cruelty to animals through education was impaired by the government's refusal

to set standards for treatment of birds. 797 F.3d at 1094. In <u>Nat'l Fair Hous.</u>, the organization expended resources to create and disseminate information about the challenged policy to affected populations. 261 F. Supp. 3d at 25–26.

A membership organization like DECAA may also bring suit if at least one of its members has standing. <u>Flyers Rts. Educ. Fund, Inc. v. U.S. Dep't of Transp.</u>, 957 F.3d 1359, 1362 (D.C. Cir. 2020) (hereinafter "<u>FlyersRights</u>"). This standing is often called representational. <u>Id.</u> An organization like DCCIL may assert representational standing even if it does not formally have members, if there are sufficient indicia of membership to make consumers the functional equivalent of members, <u>i.e.,</u> if it "is sufficiently identified with and subject to the influence of those it seeks to represent" to assert membership standing. <u>Id.</u> (citing <u>Or. Advoc. Ctr. v. Mink</u>, 322 F.3d 1101, 1111 (9th Cir. 2003)).

Here, both organizations have alleged sufficient injury to confer standing. DCCIL's ability to provide transportation and promote independence for disabled people is impaired by the District's refusal to provide accessible Services at Issue, including by erecting barriers to the organization's van service. DCCIL's drivers need more time to find parking and its passengers are at risk. <u>Supra</u> at 2-3. Defendants simply ignore these allegations. Defendants' heavy reliance on <u>Ctr. for Responsible Sci. v. Gottlieb</u>, 346 F. Supp. 3d 29, 42 (D.D.C. 2018), <u>aff'd sub nom.</u> <u>Ctr. for Responsible Sci. v. Hahn</u>, 809 F. App'x 10 (D.C. Cir. 2020), is off the mark. The organizational plaintiff in that case alleged ideological disagreement with the insufficiency of FDA procedures causing it to divert resources to education, which was already part of its mission. DCCIL, in contrast, is devoted to making people with disabilities independent and able to travel, work that is perceptibly impaired when its consumers and employees cannot move around the city, including in the DCCIL van, as safely and easily as people who do not have mobility disabilities.

DCCIL's consumers are also the functional equivalent of members. <u>Brooklyn Ctr. for Indep. of the Disabled v. Bloomberg</u>, 290 F.R.D. 409, 417 (S.D.N.Y. 2012) (holding that independent living center had representational standing); <u>Bronx Indep. Living Servs. v. Metro. Transp. Auth.</u>, No. 16 Civ. 5023 (ER), 2021 WL 1177740, at *12 (S.D.N.Y. Mar. 29, 2021) (same). By statutory mandate, the DCCIL must operate under principles of "consumer control of the center regarding decisionmaking, service delivery, management, and establishment of the policy and direction of the center[.]" 29 U.S.C. § 796f-4(b)(1)(A). Its consumers and potential consumers include all disabled people in the District. Complaint ¶ 10. Thus, while it is unnecessary to reach this question in light of the direct injury, DCCIL can also maintain representational standing.

Similarly, DECAA has been injured through its members with mobility disabilities. The Complaint gives a detailed example of one member, Kerry Bedard. Again, Defendants apparently seek to make the facts disappear by ignoring the Complaint allegations: Ms. Bedard has struggled to find accessible parking throughout the District; she specifically has had difficulty after new bicycle lanes were installed, including comparing her experiences on 17th Street and Connecticut Avenue with the greater access before bicycle lane alterations; she now limits her visits to those areas and has to travel to more distant stores. Complaint ¶¶ 147-49. In one instance she was almost hit by a bicycle. Complaint ¶ 147. The inaccessible Services at Issue caused and continue to cause a "concrete and particularized" and "actual or imminent" harm to DECAA's members, so DECAA has standing.  See <u>Nat'l Ass'n of Home Builders v. E.P.A.</u>, 667 F.3d 6, 14 (D.C. Cir. 2011).[3] While unnecessary in light of the representational standing, it is also plausible, at this early stage of

_____

[3]  Unlike DECAA, the organizational plaintiff in <u>Nat'l Ass'n of Home Builders</u> did not allege such a threat, because it was challenging an agency designation that did not in itself regulate any specific member's property. <u>Id.</u>

proceedings, that DECAA suffered perceptible impairment to its civic activities, such as promoting quality of life and community, when it had to spend substantial time attempting, ultimately unsuccessfully, to prevent the installation of unlawful access barriers on 17th Street. See Complaint ¶¶ 101-06. Thus, the Complaint more than sufficiently alleges harm to both organizational plaintiffs.

C.  All Plaintiffs Have Sufficiently Alleged Causation, Redressability, and Standing to Seek Injunctive Relief.

Plaintiffs have also sufficiently alleged that Defendants are directly responsible for both past and ongoing harm to plaintiffs. As in Kirola, "[t]he barriers [plaintiffs] encountered are 'fairly traceable' to the City because the City is responsible for construction, alteration, and maintenance of the facilities that include those barriers." 860 F.3d at 1175. The District controls and constructs the Services at Issue. Complaint ¶¶ 28-29. Defendants have built inequality into the very pavement of the streets. Instead of remedying that discrimination, they continue to build it. This Court can and should change that.

Defendants admit that they are engaged in an ongoing program of building "10 miles of protected bike lanes per year beginning in 2022." Def. Mem. at 5. The Complaint explains, in detail, how his program is making the Services at Issue less accessible. Supra 2-4. Because these allegations are "susceptible to proof at trial," Osborn v. Visa Inc., 797 F.3d 1057, 1064 (D.C. Cir. 2015), they are not "blanket," "speculative," or "conclusory," and cannot be made so by frequent use of these terms in Defendants' legal argument. Def. Mem. at 12-13. Defendants can and must adopt a bicycle lane design that provides for accessibility in the Services at Issue, and must remediate the inaccessible alterations they have made. See, e.g., Bronx Indep. Living Servs., 2021 WL 1177740, at *20  (holding that public entity may be enjoined to remedy inaccessible alteration).

Defendants do not deny that the District currently lacks the 12% of accessible on-street parking that would provide parity with the parking they provide to nondisabled people, nor that the ostensibly accessible metered spaces are restricted to two areas and not accessible to many people with mobility disabilities. Def. Mem. at 4. While Defendants have announced a new "Red Top Meter" program, drawing inferences in plaintiffs' favor requires the conclusion that it will still be inaccessible and will not remediate this discrimination. Complaint ¶¶ 128-29. It is nonsense to call this conclusion "speculative": The Department of Transportation—the agency charged with this program—has falsely stated that its current "Red Top" parking "meets ADA accessibility guidelines"; in fact, it is completely inaccessible. Complaint ¶ 122. It would be an improbable leap of faith, in Defendants' favor, to believe the new program will meet disability law requirements and remedy the serious, ongoing harms that the District's inaccessible on-street parking program cause plaintiffs.[4]

Again seizing on a minor detail to divert attention from the dozens of specific Complaint allegations to which they have no response, Defendants argue that "third parties" are responsible for two instances of harm: The injury to Ms. Robinson and the residents in her building who can no longer access vehicles in front of their building, and the placement of the 2% of ostensibly accessible parking next to barriers on the sidewalk such as the tree boxes and trash cans, which plaintiff Bolles explains she has encountered. Def. Mem. at 9, see id. 8.

-----

[4] Nor are such future plans sufficient to release a defendant from liability for existing ADA violations. "'Although [a] plan is a start, it is not evidence that creates a dispute of material fact regarding current accessibility of the programs and services' offered by the City." Am. Council of Blind of New York, Inc. v. City of New York, 495 F. Supp. 3d 211, 236 (S.D.N.Y. 2020) (quoting Disabled in Action v. City of New York, 437 F. Supp. 3d 298, 311 (S.D.N.Y. 2020)).

This argument fails.  A plaintiff harmed by third party conduct has standing to sue if there is "substantial evidence of a causal relationship between the government policy and the third-party conduct[.]" Ams. for Safe Access v. Drug Enf't Admin., 706 F.3d 438, 446 (D.C. Cir. 2013) (citation and internal quotation marks omitted) (holding that a veteran had standing to challenge a Drug Enforcement Administration regulation that the Veterans' Administration was reasonably expected to follow). Equal Rts. Ctr. is on point:  There, plaintiffs had standing to challenge the government lottery program's failure to ensure ADA compliance in granting vendor licenses, even though it was the vendor, not the government, that maintained the specific inaccessible premises, and even though accessible vendors might exist somewhere in the District. 741 F. Supp. 2d at 281-82.

On a motion to dismiss, the allegations are more than sufficient to infer that the harms alleged are fairly traceable to the District's actions.  See Pietrangelo v. Refresh Club, Inc., No. 18-cv-1943, 2019 WL 2357379, at *5 (D.D.C. June 4, 2019) ("[Article III] does not require that the challenged action must be the 'sole' or 'proximate' cause of the harm suffered, or even that the action must constitute a 'but-for cause' of the injury," (quoting Nat'l Treasury Emps. Union v. Whipple, 636 F. Supp. 2d 63, 73 (D.D.C. 2009))). Here, the link is quite direct: The District blocked Robinson's curb and failed to provide sufficient unblocked, accessible parking for Bolles. Even if third parties could mitigate the harm (which is speculation), the District is responsible for introducing the injury which is thus traceable to it. Moreover, details could be saved for a later stage of the proceeding, as both Bolles and Robinson have alleged other harms, such as Robinson's

difficulty going to her doctor and preferred pharmacy, and Bolles' difficulty parking near her home[5] and in the Northwest district. Complaint ¶¶ 152-54, 160-61.

For the same reasons, Plaintiffs have alleged redressability. A properly framed injunction will benefit them because it will require the District to remove or mitigate the harmful barriers—again just like a case Defendants cite. Kirola, 860 F.3d at 1175. Most of Defendants' argument on this point is devoted to the puzzling strawman of a request to appoint a monitor, a request that appears nowhere in the Complaint. Def. Mem. at 14; Complaint at 45-46. In any event, if Defendants have quibbles with the requested remedy, that is a different argument for a much later stage of the case. See Kirola, 860 F.3d at 1176 ("Kirola's proposed injunction does not control whether her claims are redressable.").

The Complaint sets forth factual allegations that detail how the District has built and continues to design its streets in a way that harms people with mobility disabilities like Plaintiffs: exclusive on-street, metered parking overwhelmingly only for nondisabled people, bicycle lanes that make parking even less accessible, block curb access, and make pedestrian crossings unsafe for people with mobility disabilities. An order from this Court can stop that harm.

II.    Plaintiffs Have Stated a Claim.

The ADA "is a broad mandate of comprehensive character and sweeping purpose intended to eliminate discrimination against disabled individuals, and to integrate them into the economic and social mainstream of American life." Frame, 657 F.3d at 223 (en banc) (internal quotation marks omitted) (citing PGA Tour, Inc. v. Martin, 532 U.S. 661, 675 (2001); Olmstead v. L.C. ex rel. Zimring, 527 U.S. 581, 599 (1999)). "To effectuate its sweeping purpose, the ADA forbids

---

[5] To the extent that Defendants are suggesting that there would be sufficient accessible parking near Bolles' home were it not for tree boxes and trash cans, that is an impermissible inference in Defendants' favor.

discrimination against disabled individuals in major areas of public life, among them employment (Title I of the Act), public services (Title II), and public accommodations (Title III)." PGA Tour, 532 U.S. at 675. "Title II of the ADA focuses on disability discrimination in the provision of public services." Frame, 657 F.3d at 223. Specifically, Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "A 'public entity' includes 'any department, agency, special purpose district, or other instrumentality of a State or States or local government.'" Hainze v. Richards, 207 F.3d 795, 799 (5th Cir. 2000) (quoting 42 U.S.C. § 12131(1)(B)).

Similarly, "Section 504 of the Rehabilitation Act prohibits disability discrimination by recipients of federal funding." Frame, 657 F.3d at 223; see 29 U.S.C. § 794(a). Section 504 provides that no qualified individual with a disability "shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]" 29 U.S.C. § 794(a). The ADA, the Rehabilitation Act, and the DC Human Rights Act are generally interpreted in pari materia. Levine v. Nat'l R.R. Passenger Corp., 80 F. Supp. 3d 29, 38 (D.D.C. 2015).

"To show a violation of either statute, a plaintiff must prove '(1) that he has a qualifying disability; (2) that he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his disability.'" Miraglia v. Bd. of Supervisors of the La. State Museum, 901 F.3d 565, 574 (5th Cir. 2018) (quoting Hale v. King, 642 F.3d 492, 499 (5th Cir. 2011) (per curiam)).

Pursuant to his authority, the United States Attorney General has promulgated regulations implementing Title II. 42 U.S.C. § 12134(a). These regulations provide that "no qualified individual with a disability shall, because a public entity's facilities are inaccessible to or unusable by individuals with disabilities, be excluded from participation in, or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity." 28 C.F.R. § 35.149. A public entity is required to operate "each service, program, or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities." Id. at § 35.150(a). Thus, Title II requires "program accessibility." Tennessee v. Lane, 541 U.S. 509, 5310 (2004).

"Recognizing that failure to accommodate persons with disabilities will often have the same practical effect as outright exclusion, Congress required the States to take reasonable measures to remove architectural and other barriers to accessibility." Id. (citing 42 U.S.C. § 12131(2)). However, a public entity is not "necessarily require[d] ... to make each of its existing facilities accessible to and usable by individuals with disabilities[.]" 28 C.F.R. § 35.150(a)(1). Rather, as to facilities built before 1992, Title II only requires "'reasonable modifications' that would not fundamentally alter the nature of the service provided, and only when the individual seeking modification is otherwise eligible for the service." Lane, 541 U.S. at 532.

That the ADA is an expansive statute is a well-established principle. Johnson v. City of Saline, 151 F.3d 564, 569, 671 (6th Cir. 1998) (finding that "the phrase 'services, programs, or activities' encompasses virtually everything that a public entity does" and stating that "Title II is broadly applicable to all of the activities of a public entity."). Under the ADA, when constructing new facilities or modifying an existing facilities, an entity is obligated to do so in compliance with the ADAAG. See 28 C.F.R. § 35.151 (a) (concerning new construction) and § 35.151(b)

(concerning alterations to existing facilities). "New construction and alterations ... present an immediate opportunity to provide full accessibility" and it is therefore "discriminatory to the disabled to enhance or improve an existing facility without making it fully accessible to those previously excluded." Civic Ass'n of Deaf of N.Y.C. v. Giuliani, 970 F. Supp. 352, 359 (S.D.N.Y. 1997) (quoting Kinney v. Yerusalim, 9 F.3d 1067, 1073-74 (3d Cir. 1993)). As a result, these regulations are more stringent than those concerning existing facilities, and are not subject to an undue burden defense. Kinney, 9 F.3d at 1071, 1074–75.

An entity can be held liable under the ADA for failing to comply with the new construction or alteration requirement of the ADA regulations. In the case of facilities built or altered after 1992, pursuant to the regulations, "[e]ach facility or part of a facility altered by, on behalf of, or for the use of a public entity in a manner that affects or could affect the usability of the facility ... shall, to the maximum extent feasible, be altered in such manner that the altered portion of the facility is readily accessible to and usable by individuals with disabilities...." 28 C.F.R. § 35.151(b)(1). As is discussed below, the new construction and alteration requirements have been applied to sidewalks, on-street parking, pedestrian crossing signals, and a litany of other government services.

Another way an entity can be held liable is failure to comply with the ADA requirement for "program access." Under 28 C.F.R. § 35.150(a), each "service, program, or activity" of a public entity must "when viewed in its entirety, [be] readily accessible to and usable by individuals with disabilities." Under this program access test, "[w]hile proving that particular barriers exist might not be sufficient to establish Title II liability, each barrier is a building block for a finding that the [service, program, or activity], viewed in its entirety, is not readily accessible." Pascuiti v. New York Yankees, 87 F. Supp. 2d 221, 224 (S.D.N.Y. 1999); see also id. ("[A]n important part of the

program access requirement for the [service, program, or activity] is whether all services available

for the use of non-disabled patrons also are available for [the] use of disabled patrons.").

By way of example, failure to provide program access to bus stops can constitute

discrimination. Falls v. Bd. of Comm'rs of New Orleans Reg'l Transit Auth., No. CV 16-2499,

2017 WL 2730781, at *4 (E.D. La. June 26, 2017) (finding the defendant violated the program

access requirement as to bus stops, "[g]iven the pervasive non-compliance and the Plaintiffs'

difficulties in accessing the bus stops, the Court finds that in its entirety the Plaintiffs were denied

access and thus discriminated against."). A public entity must take affirmative steps to their

programs and services in the most integrated setting appropriate. See Gaylor v. Ga. Dep't of Nat.

Res., No. 2:11-CV-288-RWS, 2013 WL 4790158, at *7 (N.D. Ga. Sept. 6, 2013) (citing Shotz v.

Cates, 256 F.3d 1077, 1080 (11th Cir. 2001).

Moreover, merely being able to enter a facility where a program is being offered does not

absolve an entity of liability. Chaffin v. Kan. State Fair Bd., 348 F.3d 850, 861 (10th Cir. 2003);

see generally, Tatum v. Doctor's Assocs., Inc., No. 14- 2980 , 2016 WL 852458, at *6 (E.D. La.

Mar. 4, 2016) ("Simply because the Plaintiff ultimately achieved his goal of making a purchase

does not mean that he did so in a manner comparable to that of non-wheelchair-using patrons").[6]

### A. Defendants Do Not Argue That Plaintiffs Have Not Adequately Alleged the First and Third Elements of an ADA/RA Claim.

As is set forth above, the elements of an ADA claim are that (1) the plaintiff has a qualifying

disability; (2) that "she is being denied the benefits of services, programs, or activities for which

the public entity is responsible, or is otherwise discriminated against by the public entity; and (3)

---

[6] While Doctor's Assocs., Inc. is a Title III case, its holding applies with equal force: The mere fact that a plaintiff is physically able to enter a facility does not mean that discrimination did not occur. Instead, the question is whether the plaintiff's ability to access some service, feature, program, or accommodation was impaired because of an inaccessible feature.

that such discrimination is by reason of [her] disability." <u>Miraglia</u>, 901 F.3d at 574. The first and third elements are not in dispute on Defendants' motion to dismiss.

On the first element, each of the individual Plaintiffs has alleged specific facts about their qualifying disability. Complaint ¶¶ 15-20. Likewise, as discussed above, the two organizational plaintiffs represent and are associated with individuals with disabilities. Defendants do not contest this element.

The third element, that the discrimination is by reason of disability, refers to a question of causation. For example, suppose that an individual with a disability is being excluded from a university because of failure to pay tuition. Said individual would satisfy the first two elements (disability and exclusion). But they would fail the third element because the exclusion was not caused by their disability, but by their ineligibility for failure to pay tuition. This third element essentially relates to eligibility to use the service at issue. <u>See, e.g.</u>, <u>Falls</u>, 2017 WL 2730781, at *4–5 ("The Plaintiffs argue that but for the discrimination caused by the system-wide barriers they would have enjoyed the bus stops fully and fairly. … The Court finds that the discrimination detailed above—the denial of safe use of or accessible bus stops—was caused solely by the fact that the Plaintiffs are disabled. The problems they encountered using the stops held their origin in the fact that they were confined to wheelchairs while attempting to use the bus stops.").

Here, each of the Plaintiffs is eligible to use on-street parking, pedestrian thoroughfares, and curb cuts. In their motion to dismiss, Defendants do not argue that Plaintiffs failed to adequately allege this element. This element is not presently in dispute.

The sole element in dispute is the second element: Whether Plaintiffs have adequately alleged that they are being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity.

Plaintiffs have adequately alleged facts to state a claim. In their Complaint, Plaintiffs provide allegations of systemic inaccessibility. Plaintiffs also provide evidence of their own lived experiences. These allegations—objective allegations of systemic inaccessibility paired with the individual experiences of the plaintiffs—are more than sufficient to state a claim.

B.  Plaintiffs Have Adequately Alleged an ADA Claim Based on Defendants' Failure to Provide Program Access as to Their On-Street Parking.

Public entities are obligated to make their on-street parking accessible to individuals with disabilities. Plaintiffs allege that Defendants' on-street parking service violates the ADA's "program access" requirement. Plaintiffs' program access claim concerning on-street parking concerns the quantity of on street parking, the inequitable distribution of the existing accessible-designated spaces, and the inaccessible nature of the Defendants' current accessible-designated parking. Any one of these failures would be sufficient for this Court to hold that Defendants have violated the "program access" requirement.

In Fortyune v. City of Lomita, the Ninth Circuit held that on-street parking can be subject to the program access standard and the alteration standard of the ADA. 766 F.3d 1098, 1103 (9th Cir. 2014). The court explained that "as a general matter, the lack of specific regulations cannot eliminate a statutory obligation." Id. at 1102. The court went on to explain that the ADA program access requirement applies to "to all existing facilities." Id. The court held that the alteration regulation of Title II of the ADA "extends to newly constructed or altered on-street parking facilities." Id. at 1103. Similarly, in Am. Council of Blind of New York, the court held the city liable for newly installed pedestrian crossing signals that failed to include features needed so that blind pedestrians could safely cross intersections. 495 F. Supp. 3d at 241.

Sarfaty v. City of Los Angeles is also instructive. There, plaintiffs brought a claim under Title II of the ADA, arguing that the city's installation of "cycletracks" or bicycle lanes interfered

with plaintiffs' vans, which are equipped with ramps that allow plaintiffs to disembark directly onto the sidewalk. No. 2:17-cv-03594-SVW-KS, 2019 WL 8163477, at *6 (C.D. Cal. 2019). This in turn inhibited plaintiffs' access to the sidewalk and required them to take a different approach. Id. The plaintiffs in Sarfaty also alleged that, when taken into consideration with other factors, the "cycletracks create[d] an allegedly dangerous condition that unduly affects [wheelchair users] and deters them from accessing establishments[.]" Id. In light of the fact that a court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party", the largely fact-specific nature of the inquiry, and plaintiffs' allegations, the court in Sarfaty held that plaintiffs successfully stated a prima facie case under Title II of the ADA. Id. (internal quotation marks omitted).

      1.   Insufficient Quantity and Inequitable Distribution.

     Plaintiffs allege that there is insufficient quantity of on-street parking and inequitable distribution of the accessible-designated on-street parking, explaining that "there is a systemic lack of accessible on-street parking throughout the majority of the District of Columbia." Complaint ¶ 99. Plaintiffs allege that there are 20,000 metered parking spaces, that only 400 of the metered spaces are designated as accessible parking, and that the spaces designated as "accessible" are "relegated to only two small sections of the District of Columbia." Complaint ¶¶ 95-97. Plaintiffs have alleged that in 2021, Defendants' Community Engagement Specialist sent an email stating that "designated ADA spaces are not required outside of the Central Business District[.]" Complaint ¶ 102. Defendants later modified the statement to claim that it is not required to provide accessible metered spaces outside of the CBD, but Plaintiffs also allege that Defendants provide "thousands" of metered parking spaces outside of the CBD. Complaint ¶¶ 106, 109. Based on the forgoing, Plaintiffs allege that "A reasonable inference can be drawn that the DDOT is of the

opinion that it is somehow exempt from the mandates of the ADA and has no obligation to provide accessible parking in the District of Columbia." Complaint ¶ 118.

Plaintiffs allege that the lack of on-street accessible parking harms them individually. For example, "Ms. Bolles found that it was so difficult to park near her home and the destinations she wanted to travel that, after a few tries, she largely gave up. Now, she limits her travel." Complaint ¶ 152. Likewise, Ms. Robinson avoids some destinations because there is no accessible parking nearby. For example, she would like to go to the CVS at 1900 7th Street NW, but there is no accessible parking nearby. Complaint ¶ 161.

Plaintiffs state a claim for violation of the program access standard, 28 C.F.R. § 35.150. Plaintiffs allege that Defendants provide a service (on-street parking), that said service is inaccessible due to lack of sufficient number of designated spaces, and that the two individual plaintiffs have experienced exclusion or undue difficulty due to this barrier. In light of the fact that a court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party", the largely fact-specific nature of the inquiry, and plaintiffs' allegations, Plaintiffs successfully state a prima facie case under Title II of the ADA. See Fortyune, 766 F.3d at 1102-03; Sarfaty, 2019 WL 8163477, at *6.

In their memorandum, Defendants attack Plaintiffs' insufficient quantity and distribution allegations with arguments that are inappropriate at the motion to dismiss stage. Defendants seize on Plaintiffs' allegation that a mere 2% of the metered spaces are accessible while 12% of the DC population has a disability and argue that (a) the statistic is irrelevant and (b) the statistic is "unhelpful to their argument." Def. Mem. at 23. However, Defendants appear to forget that, at the motion to dismiss stage, the district court must accept the allegations contained in the complaint

as true and consider the factual allegations in the light most favorable to the non-moving party. Erby v. United States, 424 F. Supp. 2d 180, 182 (D.D.C. 2006).

Far from being "irrelevant," in the light most favorable to the Plaintiffs, the disparity between the number of accessible spaces and the population with disabilities is evidence that Defendants are underserving individuals with disabilities. Defendants provide no explanation as to why non-disabled persons should receive substantially more of the on-street parking than individuals with disabilities. At the summary judgment or trial stage, Defendants will be free to attack Plaintiffs' data or present their own data. At the pleading stage, however, the disparity supports Plaintiffs' claims.

Further, when viewed in the light most favorable to the Plaintiffs, the data is not "unhelpful." As Defendants themselves point out, the PROWAG is not binding law as to the on-street parking. Def. Mem at 16. While the ADAAG and the PROWAG _may_ end up being useful guides, ultimately this Court will have to render a legal judgment as to whether the on-street parking is accessible "when viewed in its entirety." Said approach is consistent with Fortyune, where the Ninth Circuit held that government entities must ensure that their on-street parking complies with the ADA regulations and explained that "public entities must ensure that all normal governmental functions are reasonably accessible to disabled persons, irrespective of whether the DOJ has adopted technical specifications for the particular types of facilities involved." 766 F.3d at 1106.

At this stage, Plaintiffs have alleged that there is insufficient accessible on-street parking, that the existing accessible designated parking is relegated to select areas of the city, that Defendants' officials have made statements concerning a purported lack of a legal duty to provide accessible parking outside of those areas, and that the Plaintiffs have themselves been impacted

by the inaccessible conditions. Given these allegations, a reasonable inference can be drawn that Defendants are not providing program access as to their on-street parking service. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Plaintiffs' allegations are not speculative or conclusory. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007). Nor could further details be reasonably demanded at this stage because "a complaint need not contain detailed factual allegations[.]" Colony Ins. Co. v. Peachtree Const., Ltd., 647 F.3d 248, 252 (5th Cir. 2011).

    2.  <u>Insufficient Condition of the Existing Accessible-Designated Spaces.</u>

In addition to stating a claim for an insufficient quantity of accessible parking, Plaintiffs also state a claim based on the inaccessible condition of the existing on-street parking. In the District of Columbia, even where on-street parking is provided, it is frequently inaccessible. Plaintiffs allege that many of the red top meters—those spaces putatively designated as accessible by Defendants—are inaccessible because they:

       a. Are not defined with paint demarcation, making it foreseeable that cars and other vehicles will encroach on the accessible spaces;

       b. Are not consistently located next to curb cuts, making individuals with mobility disabilities travel in the street or along a bike lane to reach the intersection where a curb cut is located;

       c. Are not consistently located in the spots closest to the intersection, resulting in individuals with disabilities having to travel through the vehicular way to access sidewalks;

       d. Are frequently located next to trees, planters, bike racks, trashcans, or other barriers, which serves as a barrier to loading or unloading for individuals with disabilities; and

       e. Are often not clearly marked as accessible, which can result in vehicles for non-disabled persons partially or fully encroaching or blocking the space intended for an individual with a disability.

Complaint ¶ 122.

    Plaintiffs included several photographs of red top meter spaces, and it is readily observable that there is no painting or demarcation on the asphalt to delineate the location of the

accessible space. Complaint ¶¶ 123-127. Plaintiffs allege that many of the punitively accessible spaces are inaccessible because of their improper placement, such as adjacent to trees, bicycle racks, or planters. Complaint ¶¶ 123-127. Plaintiffs have alleged that "many" of the existing accessible-designated spaces are inaccessible and provided examples.

Given these allegations, it is facially plausible that Defendants' on-street parking program is in violation of the "program access" requirement of the ADA. Whether Plaintiffs can actually muster evidence to prove that Defendants' on-street parking program is inaccessible when viewed in its entirety is a question of fact that must be resolved on a motion for summary judgment or at trial. Plaintiffs are not required to "prove" their claim at the pleading stage.

Defendants suggest that Plaintiffs' inclusion of facts related to lived experiences and interaction with the barriers are mere "anecdotes" that are insufficient to "show that the on-street parking as a whole is inaccessible…" Def. Mem. at 24. Defendants appear to misunderstand Plaintiffs' obligation at the pleading stage. First, as previously discussed, Plaintiffs' allegations as to their own lived experiences are part of a broader complaint alleging systemic inaccessibility. What Defendants deride as "anecdotes" are allegations concerning Plaintiffs' personal experiences with the inaccessible conditions and are critical evidence in a program access claim. See, e.g., Falls, 2017 WL 2730781, at *4 (trial court finding a program access violation where the plaintiffs presented expert evidence of pervasive non-compliance and testimony from the plaintiffs about their difficulties in accessing inaccessible bus stops). Second, at the pleading stage, Plaintiffs are merely obligated to present facts that "nudge [their] claim[]" for relief "across the line from conceivable to plausible." Iqbal, 556 U.S. at 680. Given the facts alleged, it is plausible that Defendants violated the program access requirement as to their on-street parking service. Plaintiffs' allegations concerning the inaccessible on-street parking "give the defendants fair notice

of what the claim is and the grounds upon which it rests[.]" Jones v. Kirchner, 835 F.3d 74, 79 (D.C. Cir. 2016). Plaintiffs are not obligated to prove their allegations concerning systemic accessibility at the pleading stage.

In their effort to minimize Plaintiffs' lived experiences, Defendants cite the case of Kirola, 860 F.3d at 1183, and argue that said anecdotal evidence is insufficient. Defendants' argument miscomprehends Kirola. In Kirola, following a trial on the merits, the district court ruled that plaintiffs failed to prove their sweeping claims of a lack of program access to both sidewalks and parks. Id. The Ninth Circuit sustained the district court's holding that that the testimony *by the plaintiffs in that case* did not, standing alone, establish inaccessibility at a programmatic level. Id. The claims really floundered, however, because the district court also concluded that the expert testimony was unreliable as the experts relied on outdated data, overstated inaccessible conditions, did not consider certain "critical measurements," did not account for dimensional tolerances, used inconsistent measurement techniques, and relied on potentially unqualified individuals to assist with surveys. Id. The inability of the Kirola plaintiffs to meet their burden of proof at trial was the result of unreliable trial evidence, not a shift in the law. The Kirola opinion has no bearing on whether Plaintiffs' Complaint is sufficient at the pleading stage.

C.  Plaintiffs Have Adequately Alleged an ADA Claim Based on Defendants' Policy or Practice of Making On-Street Parking and Pedestrian Crossing Inaccessible Via Use of Bicycle Lanes.

Plaintiffs have adequately alleged that Defendants violated the program access requirement and the alteration requirement of the ADA based on Defendants' policy or practice of making on-street parking and pedestrian crossings inaccessible through use of bicycle lanes. As Plaintiffs explain, one of their fears and reasons for bringing this case is their concern that the DDOT will continue to install "protected bike lanes without providing the proper number and dimensions of

accessible spaces, accessible PUDOs, or pedestrian thoroughfares, making the District of Columbia even less accessible to individuals with mobility-related disabilities." Complaint ¶ 49.

To support their allegation that Defendants are rendering on-street parking and pedestrian crossings inaccessible via use of bicycle lanes, Plaintiffs focus on the exemplar of 17th Street. Plaintiffs allege that Defendants modified 17th Street and, in doing so, reduced the accessibility of the on-street parking on that street. The redesigned 17th Street "did not include any accessible-designated parking spaces along the approximately half-mile stretch." Complaint ¶ 52. Plaintiffs allege that spaces designated as accessible were removed. Complaint ¶ 53. Plaintiffs further allege that the regular curbside parking was removed and replaced with parking that requires wheelchair users to unload into a vehicular travel lane or bicycle lane. Complaint ¶ 54, see id. ¶¶ 56-57. Plaintiffs allege that this design, forcing wheelchair users to load and unload in a bicycle account, has a "disproportionate burden on individuals with disabilities." Complaint ¶ 58. Individuals who do not use a wheelchair can immediately leave the bicycle lane. In contrast, a wheelchair user "will have to assemble their wheelchair or other mobility device in a bike lane, transfer into their wheelchair in the bike lane, and then travel down a row of parked cars to reach a crosswalk to be able to access the sidewalk." Complaint ¶ 59.

Plaintiffs have adequately alleged their claim. Under the narrative above, Defendants took a service, modified it, and made it less accessible to individuals who use wheelchairs. Given the above, it is likely that Defendants' on-street parking has been rendered inaccessible by the bicycle lanes. This more than satisfies the "plausibility" standard set forth in Iqbal. 556 U.S. at 680.

In their motion, Defendants argue that the lack of accessible parking on 17th Street is "not a violation of the ADA." Def. Mem. at 16. Defendants argue that, under the PROWAG, their on-street parking can comply with the PROWAG even without accessible parking spaces on 17th

Street so long as there is accessible parking on the "*per block perimeter*." Def. Mem. at 17. Defendants then argue that Plaintiffs' Complaint is insufficient because Plaintiffs have not included allegations as to these adjacent streets.

Defendants' argument is a merits attack in veiled form. Defendants do not deny that they redesigned 17th Street to remove curbside parking, including spaces that were designated as accessible. Nor do Defendants deny that the rebuilt street includes new parking that is available to nondisabled people but inaccessible to Plaintiffs, because of the bicycle lane barriers. Plaintiffs allege this redesign made the area less accessible, unnecessarily. Complaint ¶¶ 58, 61, 68-71. 147, 149. At a later stage of the case, Defendants may attempt to show that Plaintiffs are wrong, and the area is actually not less accessible to them. The Complaint, however, states a claim.

Contrary to Defendants' arguments, Plaintiffs are not required to include detailed allegations to demonstrate a violation of PROWAG. Defendants readily acknowledge that the PROWAG is merely guidance, not law. Def. Mem at 16. ("For starter, the District is not bound to PROWAG guidance because it has not been finalized or adopted as regulations."). But this concession dooms Defendants' argument. To determine whether Defendants' on-street parking on 17th Street is in violation of the alteration standard, this Court will (a) first determine how to assess the accessibility of the on-parking (be it reference to a standard or otherwise) and then (b) compare that standard to the facts presented by the parties as to the condition of 17th Street. Both inquiries will be informed by discovery and the parties' expert reports and testimony. At the pleading stage, a defendant is not entitled to dismissal of a case merely because there is no standard that "spells out exactly how" the defendant must fulfill its obligation to comply with the ADA. Robles v. Domino's Pizza, LLC, 913 F.3d 898, 907 (9th Cir. 2019) (holding that an ADA claim against defendant as to inaccessible website and app could proceed even without a specific standard as to

how the defendant must provide effective communication and facilitate "full and equal enjoyment" to its goods and services to its customers who are disabled). Defendants' argument is merely disagreement with how the accessibility of the on-street parking should be evaluated.

Alternatively, Defendants' argument could be evaluated as a sufficiency argument, e.g., that Plaintiffs should have included allegations as to the adjacent streets. But this approach is even less availing as courts have not hesitated to reject demands by defendants for hyper-specific allegations at the pleading stage. For example, in the case of Namisnak v. Uber Techs., Inc., the plaintiffs alleged that they were aware of Uber's inaccessible service, that they planned to use it if it became accessible, but that they were presently deterred from using the service. 971 F.3d 1088, 1092-93 (9th Cir. 2020). Uber argued that the plaintiffs' allegations were conclusory because there could be other reasons they were deterred from using Uber's services, such as lack of "smartphones, credit cards, access to the App Store or Google Play Store, or a desire to assent to the Terms and Conditions of the Uber App." Id. at 1093. The Ninth Circuit rejected Uber's demand for such highly specific factual pleading. Id.

Defendants plow the same ground as Uber, but the argument is equally unfruitful. Defendants contend that Plaintiffs must allege that their exclusion is not just from the lack of accessible parking on 17th Street, but also from the lack of accessible parking on adjacent streets. At the pleading stage, however, a complaint is not deficient where it does not cite all evidence relevant to the dispute. Falls v. Hous. Auth of Jefferson Par., No. 15-6501, 2016 WL 1366389, at *6-*7 (E.D. La. Apr. 6, 2016) ("Falls does not need to prove the reasonableness of his accommodation request in order to survive a motion to dismiss. … While defendants may complain that Falls' complaint does not contain certain facts which are relevant to the reasonableness determination, a complaint is not deficient simply for failing to cite all evidence

relevant to the dispute."); <u>Badalamenti v. La. Dep't of Wildlife & Fisheries</u>, 439 F. Supp. 3d 801, 808 (E.D. La. 2020) (holding that the reasonableness of a Plaintiff's accommodation request is an inappropriate inquiry at the motion to dismiss stage).

Notably, Defendants cite no cases where a district or appellate court has required a plaintiff to plead that they were excluded *and* that no alternative or nearby means of access exists. Undersigned has located no cases utilizing such a heightened pleading standard in an ADA case. A plaintiff is not obligated to "prove" their claims at the pleading stage. The facts alleged by Plaintiffs make it plausible that Defendants have violated the alteration standard on 17th Street.

Finally, Defendants argue that Plaintiffs' claims as to pedestrian thoroughfares are vague and conclusory. Def. Mem. at 20. However, Plaintiffs' allegations concerning pedestrian thoroughfares are simply part of the larger tapestry of the Complaint. Plaintiffs spend numerous paragraphs describing the bicycle lane setup and the issues and dangers created therein. Complaint ¶¶ 51-80. Plaintiffs then proceed to explain that the bicycle lane setup impacts pedestrian "crossings" and "loading and unloading zones." Complaint  ¶¶ 81-82. Of course, someone who parks and leaves their vehicle is then a pedestrian. Plaintiffs' allegations on pedestrian access focus on the issues germane to this case, namely, bicycle lanes and on-street parking.

These allegations concerning the lack of access caused by bicycle lanes at pedestrian "crossings" and "loading and unloading zones" cannot be evaluated out of context of the remainder of the Complaint. A complaint should be read in its entirety. <u>Braden v. Wal–Mart Stores, Inc.</u>, 588 F.3d 585, 594 (8th Cir. 2009) (explaining that the complaint should be read in its entirety and "not parsed piece by piece to determine whether each allegation, in isolation, is plausible"). It is especially important that Plaintiffs' Complaint be "read in its entirety" because the "program access" requirement mandates that the entity ensure that the "service, program, or activity, when

viewed in its entirety, [be] readily accessible to and usable by individuals with disabilities." 28

C.F.R. § 35.150(a). Given that a holistic assessment will be required at the factual stage, the Court

should likewise engage in a high-level assessment at the pleading stage.

CONCLUSION

For the foregoing reasons Defendants' motion to dismiss the Complaint should be denied.

DATED:      New York, NY0
            March 16, 2023

                                        Respectfully Submitted,


                                        /s/ Maia Goodell
                                        VLADECK, RASKIN & CLARK, P.C.
                                        Maia Goodell
                                        565 Fifth Avenue, 9th Floor
                                        New York, New York 10017
                                        T: (212) 403-7300; F: (212) 221-3172


                                        /s/ Garret DeReus
                                        BIZER & DEREUS
                                        Garret DeReus
                                        Andrew Bizer
                                        3319 St. Claude Ave.
                                        New Orleans, LA 70117
                                        T: (504) 619-9999; F: (504) 948-9996


                                        Attorneys for Plaintiffs